IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANTOLIN GARCIA-MANZANARES, ) | |
| ) | |
| Petitioner, ) | |
| ) | 1:17CV566 |
| v. ) | 1:15CR338-1 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Antolin Garcia-Manzanares, a federal prisoner, filed a Motion [Doc. #88] to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. On December 10, 2015, Petitioner pled guilty to one count of conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C) and one count of reentry of a deported felon in violation of 18 U.S.C. § 1326(a) and (b)(1). He was later sentenced to 192 months of imprisonment for the drug conviction and a concurrent 120 months of imprisonment for the illegal reentry conviction. Petitioner filed no direct appeal, but did later file his present Motion in which he raises four claims for relief, all of which the Government opposes. Specifically, Petitioner claims in his Motion that his attorney provided ineffective assistance of counsel by: 1) failing to file a notice of appeal despite a specific instruction from Petitioner to file one, 2) failing to object to the assessment of a criminal history point under the United States Sentencing Guidelines based on a DUI not committed by Petitioner, 3) advising Petitioner that if he cooperated with the Government, he would receive a "Safety Valve" reduction at sentencing and then failing to object when Petitioner did not receive that reduction, and 4)

failing to appeal to raise the reasonableness of Petitioner's sentence. In a Memorandum [Doc. #89] filed with the Motion, Petitioner alters his claims somewhat. He contends that, in addition to the DUI offense erroneously attributed to him, a possession of marijuana conviction was also erroneously attributed to him and that counsel did not contest that conviction. He additionally claims that his plea agreement included an agreement with the Government in which he would cooperate and the Government would then file a motion seeking a downward departure at sentencing under USSG § 5K1.1 and also later file a motion seeking a post-sentencing reduction under Fed. R. Crim. P. 35(b)(1). He faults his attorney for not objecting because the Government failed to file those motions. Finally, in his Reply [Doc. #99], Petitioner adds an allegation that his attorney incorrectly told him that he would be able to participate in the Residential Drug Abuse Program (RDAP) once in prison.

Petitioner's first and fourth claims raise similar issues. As noted above, Petitioner's first claim is that his attorney provided ineffective assistance because he did not file an appeal even though Petitioner told him to do so. Petitioner's fourth claim for relief appears to be a variation of this claim, or at least turn on the same facts, in that it alleges that Petitioner's attorney did not appeal the reasonableness of Petitioner's sentence. In order to prove ineffective assistance of counsel generally, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). With respect to the first prong of this analysis, the petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to establish prejudice, Petitioner must show that there is a

2

Case 1:15-cr-00338-LCB   Document 110   Filed 07/17/19   Page 2 of 10

reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694. Regarding Petitioner's claims that his attorney failed to file an appeal as instructed, the Supreme Court has held that the dual performance and prejudice inquiry of Strickland provides the proper framework for analyzing a claim that counsel was ineffective for failing to file a notice of appeal. See Roe v. Flores-Ortega, 528 U.S. 470 (2000). The Roe Court reaffirmed that a defense attorney's performance falls below an objectively reasonable standard if he disregards the defendant's specific instructions to file a notice of appeal which defendant wants at the time and to which the defendant has a right. Id. at 477. However, if a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, and if counsel consulted with the defendant about an appeal, counsel performs unreasonably only by failing to follow the defendant's express instructions with respect to an appeal. See id. at 478.

Petitioner alleged in his Motion that, immediately following his sentencing, he instructed his former attorney to file an appeal of his sentence. That attorney, Mark A. Perry, filed an Affidavit [Doc. #96-1] stating that "[i]mmediately after sentencing on July 8, 2016, [Perry] went to the U.S. Marshal's lock-up with Dr. Ernest Lunsford translating, and explained the sentence imposed by Judge Biggs and discussed [Petitioner's] right to give notice of appeal of that sentence." (Perry Affidavit, ¶ 2.) However, Perry claimed that Petitioner did not ask him to appeal even after being advised of his right to appeal. (Id., ¶ 3.) Petitioner filed a Reply [Doc. #99] stating that Perry was "being disingenuous with regard to filing a notice of appeal," that "Perry's claim that he discussed or consulted with Garcia with anything to do with filing an appeal is false," that Perry's claim that the met with Petitioner with a translator to explain

3

the sentence and discuss Petitioner's right to appeal is "patently false," that Petitioner told Perry immediately after sentencing to file an appeal, and that Perry said he would do so. (Reply at 2, 3, 5, 6.) Based on the record before the Court, there existed a dispute of material fact regarding the notice of appeal issue which required an evidentiary hearing to resolve. The Court appointed counsel and held that hearing on June 25, 2018.

Three witnesses testified at the evidentiary hearing. Petitioner first took the stand and immediately contradicted the claims in his filings. Petitioner testified that he and Perry did talk about an appeal immediately after sentencing, that Perry told him he had fourteen days to appeal, and that Petitioner did not then tell him to file an appeal. Instead, Petitioner testified that he did not know what to tell Perry at that point, but told him that he would have his wife contact Perry later. Petitioner stated that he did later tell his wife that he wanted to appeal. He had previously communicated with Perry through his wife and believed that his wife told Perry he wanted to appeal. However, no appeal was filed. He believes that Perry did not file the appeal because Petitioner did not finish paying him. Petitioner also spoke with his former co-defendant, Juana Orozco, about his appeal and claims that she told him that he could not appeal unless he paid.

On cross-examination, Petitioner stated that he did not prepare his § 2255 Motion, but instead relied on another inmate who spoke both Spanish and English. That inmate typed the answers into the form based on Petitioner's dictation and then read the form back to Petitioner. Petitioner testified that the understood the answers and that he knew the form was submitted under oath as being true and correct. Petitioner then signed the form. He also testified that he spoke with Perry about an appeal immediately after sentencing through a

4

translator who he believed "was a doctor." Petitioner testified that during that meeting, Perry told him that he could appeal and also told Petitioner to let him know if he wanted to appeal. Petitioner testified that he never told Perry to file an appeal, but that he later sent his wife and Juana Orozco to speak to Perry. Petitioner stated that Orozco was a friend, but that he did not wish to talk any more about her at the proceeding.

Petitioner's wife, Maria Estella Hernandez, then testified at the evidentiary hearing. She stated that at some point after Petitioner's sentencing, Petitioner called her and told her to tell Perry to appeal. She was initially uncertain as to the timing of the communications other than the fact that she and Perry spoke about Petitioner's sentence via text message and telephone after the sentencing and that Petitioner later asked her to contact Perry about an appeal. She testified that when she raised the issue, Perry stated that the 14-day appeal period had already passed. Later, Hernandez testified that she believed they spoke in May of the year Petitioner was sentenced. Petitioner's sentencing occurred on July 8, 2016. On cross-examination, she confirmed that they spoke in May of 2017. She also said that Petitioner called her closer in time after sentencing and that she called his attorney and left a message. She stated that Perry texted her saying that he got the message, but that he did not have an interpreter that day and would call her back. He did not, but they later spoke in May of 2017.

The Government called Perry as its only witness at the evidentiary hearing. Perry testified that he has been practicing law for 31 years, with 25 of those years involving practice in federal court, but particularly the last five years. He was hired to work on Petitioner's case and did so, guiding him through a guilty plea and the process of cooperating to receive a sentencing reduction. Regarding Petitioner's sentencing, Perry confirmed sending Petitioner's

5

wife a text message after sentencing and then speaking to her in 2017, when she asked if an appeal could be filed. He told her that it was too late because the 14-day appeal period had expired nine months before. He testified that they had also discussed other matters in the intervening months. He knew Juana Orozco as well and spoke to her, but not about an appeal. Perry stated that if told to file an appeal, he would have done so regardless of the money he was owed and that he told Petitioner or his family that they should not worry about the money they owed him because the family would need it. Perry stated that he did not recall Hernandez leaving a message and that they usually communicated via text message. He only talked to her about an appeal well after the time for any appeal expired. Perry also stated that Petitioner knew his address and had sent him letters in the past.

    Prior to the evidentiary hearing, Petitioner's pleadings and Attorney Perry's affidavit differed greatly regarding the events that occurred immediately following sentencing. Particularly as to Perry's affidavit stating that he used Dr. Ernest Lunsford as an interpreter to discuss an appeal with Petitioner and that Petitioner did not tell him to appeal, Petitioner in his filings accused Perry of being "disingenuous" and "false." However, the testimony at the hearing made it clear that Perry's account was accurate and that Petitioner's version of events, that is, that Perry did not discuss an appeal and/or that he ignored Petitioner's instructions to file an appeal immediately after sentencing, was actually the false account. In fact, Petitioner admitted under oath that Perry did discuss an appeal with him through an interpreter who "was a doctor" and that Petitioner did not then tell Perry to appeal. Instead, Petitioner gave an entirely new story in which he instructed Hernandez and Orozco to tell Perry to appeal, but Perry refused because of a lack of payment.

6

The timing of Petitioner's alleged instructions through others was not clear from his testimony. However, Hernandez testified that she may have attempted to contact Perry within the 14-day appeal window, but was unable to reach him other than leaving a message to call her and that she then did not speak to him for approximately nine months, or in May of 2017. Perry agreed that they spoke at that point, well after any possible time for filing an appeal expired, but denied that Hernandez left a message earlier or that he refused to file an appeal because of money. He also testified that Hernandez typically communicated with him via text message, not voice messages. To the extent that there is any conflict between the witnesses regarding the timing or nature of the communications between Petitioner, Hernandez, and Perry, the Court finds that Perry is credible and that Petitioner and Hernandez are not. Perry consulted with Petitioner about an appeal immediately following sentencing and Petitioner did not instruct him to appeal at that time or at any time within the relevant appeal period. It is clear that any communication regarding an appeal occurred in May of 2017, when Petitioner began to prepare for his § 2255 filing, and not before. There was nothing Perry could do about an appeal at that time. Therefore, he did not provide ineffective assistance regarding Petitioner's notice of appeal and Petitioner's first and fourth claims for relief should be denied.

Petitioner's second and third claims for relief also do not have merit. Petitioner's second claim for relief mainly faults his attorney for not challenging a DUI conviction listed in Paragraph 61 of the Draft Presentence Report [Doc. #56]. However, the record is clear that counsel did file a Response [Doc. #60] containing an objection to the DUI conviction. Further, the conviction was removed from the "Adult Criminal Conviction(s)" section of the final Presentence Report [Doc. #66] and moved in a different form to an "Other Arrests"

section.  (Presentence Report, ¶ 65.)  Petitioner received no criminal history points for that conviction and his criminal history at sentencing was III, as calculated in the Final Presentence Report, not IV as calculated using the DUI conviction in the Draft Presentence Report. (Sentencing Trans. [Doc. #94] at 5-6.)  Not only did Petitioner's attorney object to the use of the conviction, he succeeded with his objection and the conviction was not used against Petitioner in this Court.  His claim to the contrary has no merit and should be denied.

Petitioner also states at one point that his attorney failed to challenge a prior conviction for possession of marijuana.  However, neither the Draft nor Final Presentence Reports contained such a conviction.  Petitioner may be confused because both do contain a conviction for felony trafficking marijuana by possession.  Paragraph 59 of the Final Presentence Report reflects that Petitioner served a sentence of 21 to 26 months in prison in North Carolina for that conviction before being deported.  It is true that Petitioner's attorney did not object to the listing of that conviction, but Petitioner provides no possible grounds for doing so. Therefore, his allegation regarding the marijuana conviction should be denied because it is insufficient and conclusory.

Petitioner's third claim for relief alleges that his attorney incorrectly advised him that the "U.S.S.G.'s Safety Valve' Provision" would apply in his case if he cooperated with the Government and that his attorney failed to file an objection at sentencing when the provision was not applied.  (Motion, § 12, Ground Three.)  Again, Petitioner is somewhat confused, stating at the evidentiary hearing that he believed that the "safety valve" is a rule providing credit for cooperation with the police.  Actually, the term "safety valve provision" typically refers to USSG § 5C1.2, which works in conjunction with 18 U.S.C. § 3553(f) to allow

8

sentencing judges to avoid the effects of statutory mandatory minimum drug sentences on first offenders in certain situations. The Government argues, and correctly so, that Petitioner did not meet the requirements of § 5C1.2 that he have no criminal history points and that he not be a leader or supervisor of others in the offense. Moreover, the drug charges faced by Petitioner carried no statutory mandatory minimum sentences. Therefore, § 5C1.2 could not have affected his sentence even if he met the criteria of the provision. His sentence was based purely on the Guidelines and not on any statutory mandatory minimum. Petitioner's attorney had no basis to object to the fact that the § 5C1.2 provision was not used at sentencing and he could not have prejudiced Petitioner by failing to do so.

In his other pleadings, Petitioner additionally alleges that his plea agreement required the Government to file a motion seeking a sentencing reduction under USSG § 5K1.1 prior to his sentencing and another motion seeking a sentencing reduction under Rule 35(b)(1) after sentencing. He faults his attorney for not objecting when the Government did not file these motions. However, Petitioner's Plea Agreement [Doc. #42], which he signed, does not contain any promise by the Government to file the motions as alleged by Petitioner. In fact, the Agreement does not even mention those motions or Petitioner's cooperation with the Government. The Plea Agreement also explicitly states that it represents the entirety of the plea bargain between the parties. Petitioner further stated under oath at his change of plea hearing that the written agreement represented the entire agreement between himself and the Government and that no other promises had been made. (Change of Plea Trans. at 6-7.) The Government was under no obligation to file any motions under the Plea Agreement, and Petitioner's attorney had no basis to claim otherwise. Nevertheless, the Government actually

9

Case 1:15-cr-00338-LCB Document 110 Filed 07/17/19 Page 9 of 10

did file a motion under USSG § 5K1.1, leading to a sentencing reduction for Petitioner. It did not file a post-sentencing motion under Rule 35. However, Petitioner makes no allegation that he provided additional assistance, which means that there would have been no basis for any such motion or for his attorney to act to compel such a motion. However analyzed, Petitioner's claim is meritless and should be denied.

Finally, Petitioner states that his attorney incorrectly advised him that he would be eligible for the RDAP program while imprisoned. It is not entirely clear whether or not Petitioner intends to seek relief based on this allegation, but, regardless, he provides no explanation for how this alleged misadvice prejudiced his case. Therefore he cannot establish a claim of ineffective assistance and this claim should be denied.

IT IS THEREFORE RECOMMENDED that Petitioner's Motion [Doc. #88] to vacate, set aside, or correct judgment be denied and that Judgment be entered dismissing this action.

This, the 17th day of July, 2019.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge